## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

CHRISTINA HOWE, as Personal Representative
for the Estate of SALVATORE CIPOLLONI,

      Plaintiff,

v.

MATTHEW WILSON, in his individual
capacity, ASHLEY KUSNIR, in her individual
capacity, and CITY OF DEARBORN,

      Defendants.

Case No.  2:24-cv-12022
Hon.
Mag.

**COMPLAINT and
JURY DEMAND**

---

MICHAEL L. JONES (P85223)
JONATHAN R. MARKO (P72450)
Marko Law, PLLC
Attorney for Plaintiff
220 W. Congress, 4th Floor
Detroit, MI 48226
P: (313) 777-7529
F: (313) 771-5785
michael@markolaw.com
devynn@markolaw.com

---

## <u>COMPLAINT</u>

    **NOW COMES** Plaintiff Christina Howe, as the Personal Representative for

the Estate of Salvatore Cipolloni, by and through her attorney, Michael L. Jones of

Marko Law, PLLC, and for her complaint against the named Defendants, states as

follows:

MARKOLAW.COM

220 W. CONGRESS, 4TH FLOOR
DETROIT, MI 48226

P: (313) 777-7LAW
F: (313) 470-2011

JM MARKO LAW

**INTRODUCTION**

1.      Salvatore Cipolloni died on September 23, 2021, after being handcuffed and pinned to the ground by Dearborn police officers.

2.      Body worn camera shows Officer Ashley Kusnir holding her knee on Mr. Cipolloni's neck in a Dearborn motel as he gasped for breath.

3.      The death was unnatural and caused by the officers' use of force.

**JURISDICTION**

4.      This Court has subject matter jurisdiction over the federal claims raised in this action pursuant to 28 U.S.C. §§ 1331 and 1343.

5.      Plaintiff seeks damages and declaratory relief to enforce federal rights under 42 U.S.C. § 1983.

6.      Plaintiff seeks reasonable costs and attorney's fees under 42 U.S.C. §§ 1988 and 12205.

7.      This Court has jurisdiction to issue declarator, and other relief under 28 U.S.C. §§ 2201 and 2202.

**VENUE**

8.      Venue is proper in the Southern Division of the Eastern District of Michigan pursuant to 28 U.S.C. § 1391(b) because the events giving rise to this action occurred at the Falcon Inn Motel, 25125 Michigan Avenue, Dearborn, Michigan.

MARKOLAW.COM

220 W. CONGRESS, 4TH FLOOR
DETROIT, MI 48226

P: (313) 777-7LAW
F: (313) 470-2011

MARKO LAW

## PARTIES

9.      Defendant ASHLEY KUSNIR was, at all relevant times to this Complaint, employed by the Dearborn Police Department. Defendant Kusnir acted under the color of law when she willfully deprived Mr. Cipolloni rights and privileges protected by the Constitution of the United States of America.

10.     Defendant MATTHEW WILSON was, at all relevant times to this Complaint, employed by the Dearborn Police Department. Defendant Wilson acted under the color of law when he willfully deprived Mr. Cipolloni rights and privileges protected by the Constitution of the United States of America.

11.      Defendant CITY OF DEARBORN was a municipal corporation organized under the laws of the State of Michigan, charged with operating the City of Dearborn Police Department, within Wayne County. At all material times, Defendant CITY OF DEARBORN acted under color of state law.

12.     Decedent Salvatore "Sal" Cipolloni was only 38 years old at the time

 of his death. He loved his four children. He was survived by his father, Frank Cipolloni, sister, Lisa, and brother, Craig. Sal had a gift of making everyone he met feel loved and appreciated.

13.     Plaintiff Christina Howe was appointed and qualified as the personal representative of the Estate of Salvatore Dominic Cipolloni on January 24, 2024, in the Oakland County Probate Court; File No. 2024-418, 136-DE. Ms. Howe was, at all relevant times to this Complaint, a United States citizen and Michigan resident in the City of Novi, Oakland County.

## STATEMENT OF FACTS

14.     On September 23, 2021, Salvatore Cipolloni died while in the custody of the Dearborn Police Department.

15.     Around 8:45 p.m. on the day Mr. Cipolloni died, Dearborn Police Department responded to a call from the manager at the Falcon Inn Motel who said Mr. Cipolloni was yelling for help near or from room 39.



16.     Defendant Dearborn Police Officer Matthew Wilson responded for a welfare check.

MARKOLAW.COM

220 W. CONGRESS, 4TH FLOOR
DETROIT, MI 48226

P: (313) 777-7LAW
F: (313) 470-2011

MARKO LAW

17.    Defendant Wilson found Salvatore Cipolloni barricaded behind the emergency exit only door.

18.    Mr. Cipolloni was in obvious distress, making grunting noises and asking for help.

19.    After two minutes after Wilson arrived, Mr. Cipolloni stepped away from the emergency exit door and allowed Defendant Wilson into the emergency exit stairway.

20.    Defendant Wilson immediately grabbed Mr. Cipolloni's left arm.

21.    Defendant Wilson's demeanor and tone of voice immediately changed once he grabbed Mr. Cipolloni's arm.

22.    Without hesitation or allowing Mr. Cipolloni to comply, Defendant Wilson shouted, "On the ground!"

23.    Defendant Wilson then grabbed the back of Mr. Cipolloni's neck and forced Mr. Cipolloni to the ground.

24.    Defendant Wilson placed his knee and body weight onto Mr. Cipolloni's back.

25.    Mr. Cipolloni was in obvious distress and kept asking to be let up.

26.    Defendant Wilson ignored Mr. Cipolloni's cries for help.

27.    About two minutes later, Defendant Kusnir arrived on scene.

28.  The officers pin Mr. Cipolloni facedown – Defendant Kusnir kneeling on his neck and holding his wrists, Defendant Wilson kneeling on his upper legs.



**(Wilson's body camera shows Kusnir kneeling on Mr. Cipolloni's neck)**

29.  The officers handcuffed and fully secured Mr. Cipolloni.

30.  Defendant Kusnir's knee remained on Mr. Cipolloni's neck.

31.  Mr. Cipolloni's breathing became obviously distressed.

32.  His breathing was faint.

33.  Mr. Cipolloni gasped for air.

34.  Two minutes after Defendant Kusnir placed her knee on Mr. Cipolloni's neck, she checked for a pulse.

35.   She alleged she felt a pulse.

36.  Defendant Wilson requested Narcan.

MARKOLAW.COM

220 W. CONGRESS, 4TH FLOOR
DETROIT, MI 48226

P: (313) 777-7LAW
F: (313) 470-2011

MARKO LAW

37.    Two more minutes passed before anyone arrived with Narcan.

38.    Mr. Cipolloni was pronounced dead that night.

39.    On September 27, 2021, Dr. Bader J. Cassin conducted an autopsy on the body Salvatore Cipolloni.

40.    Dr. Cassin found Mr. Cipolloni's death was not a natural cause of death.

41.     Mr. Cipolloni's death was caused by the officers' use of force.

## CAUSES OF ACTION

### COUNT I
### EXCESSIVE FORCE
### Violation of the Fourth Amendment to the US Constitution
### (Defendants Kusnir and Wilson)

42.    Plaintiff hereby incorporates all other paragraphs of her complaint as if fully set forth herein.

43.    Plaintiff brings this action pursuant to 42 U.S.C. § 1983 alleging excessive force in violation of the Fourth Amendment.

44.    The Fourth Amendment of the U.S. Constitution protected Plaintiff from excessive force.

45.    Defendants are "persons," as defined under 42 U.S.C. § 1983, and as agents of the City of Dearborn and the Dearborn Police Department, were acting under the color of state law at all times relevant to this action.

MARKOLAW.COM

220 W. CONGRESS, 4TH FLOOR
DETROIT, MI 48226

P: (313) 777-7LAW
F: (313) 470-2011

MARKOLAW

46. By engaging in the above-described acts, Defendants, acting under color of law and with deliberate indifference, violated Plaintiff's right under the Fourth Amendment to the U.S. Constitution to be free from excessive force.

47. Plaintiff's right to be free from excessive force as described herein was clearly established at the time Defendants took him into custody.

48. Reasonable officers in the position of Defendants at the time of this incident – prior to the deadly force used against Mr. Cipolloni – would have known, in light of existing law, that the unlawfulness of this action was apparent under the circumstances, would be a violation of clearly established law, and of Mr. Cipolloni's constitutional rights against unlawful deadly force.

49. Defendants were informed of the definition of de-escalation as defined under the Dearborn Police Department General Order.

50. General Order (GO) A-2.15, defined de-escalation as "taking action and/or communicating verbally or non-verbally during a potential force encounter to stabilize the situation and reduce the immediacy of a threat so that more time, options, and resources are available to resolve the situation. De-escalation is also an effort to reduce or end the use of force after a threat has ended or diminished."

51. The Dearborn Policy Department General Order GO A-2.15 states:

> The most appropriate response to a given situation may be to try to defuse and de-escalate it using options which may include distance and cover, tactical repositioning, "slowing down" situation that do not pose an immediate

threat, containment, calling for supervisory support, additional officers, and/or specialized units or resources. Officers shall, when feasible, employ de-escalation techniques to decrease the likelihood of the need to use force during an incident and to increase the likelihood of voluntary compliance. Officers shall, when feasible, attempt to understand and consider the possible reasons why a subject may be noncompliant. A subject may not be capable of understanding the situation because of a medical condition, a mental, physical, or hearing impairment, a language barrier, drug interaction, or emotional crisis, and have no criminal intent. These situations may not make the subject any less dangerous, but understanding the subject's situation may enable officers to calm the subject and allow the use of de-escalation techniques while maintaining the safety of the public and the officer. Disengagement may also be an effective option when officers know the identity of a person suspected of a minor offense, who poses no threat to public safety, and it would be safer to arrest or issue a citation rather than engaging in a potentially dangerous pursuit or confrontation.

52.    Defendants acted intentionally, maliciously, and in reckless disregard of Plaintiff's rights.

53.    As a proximate result of Defendants' actions and inactions, Plaintiff suffered and continues to suffer emotional suffering, psychological injury, and trauma. Plaintiff continues to experience fear, distrust, and anxiety regarding law enforcement officers.

34.    Plaintiff is entitled to declaratory relief, compensatory damages, punitive damages, and reasonable attorneys' fees and costs.

## <u>COUNT II</u>
## DELIBERATE INDIFFERENCE

**Violation of the Fourth and Fourteenth Amendments to the US Constitution (Defendants Kusnir and Wilson)**

35.     Plaintiff hereby incorporates all other paragraphs of her complaint as if fully set forth herein.

36.     Decedent was entitled to all rights, privileges, and immunities accorded to all citizens of the State of Michigan and the United States.

37.     At all relevant times, Defendants were acting within the course and scope of their employment with the City of Dearborn and Dearborn Police Department and were acting under color of state law with authority granted to them as officers.

38.     Pursuant to 42 U.S.C. §1983, as well as the Fourth and Fourteenth Amendments to the United States Constitution, the individually named Defendants owed Mr. Cipolloni duties to act prudently and with reasonable care.

39.     The conduct of Defendants deprived Mr. Cipolloni of his clearly established rights, privileges, and immunities in violation of the Fourth and Fourteenth Amendments of the Constitution of the United States, and 42 U.S.C. § 1983.

40.     Defendants owed duties to the residents of Dearborn and to Mr. Cipolloni in particular, to act prudently and with reasonable care in the formulation of its policies and procedures relative to providing prompt and immediate medical treatment, as well as to train, test, evaluate, review, and update its officers and

deputies abilities to function in a reasonable manner and in conformance with the laws of the United States and the State of Michigan related to providing individuals with necessary and life-saving medical attention.

41.    Mr. Cipolloni had a sufficiently serious medical need.

42.    It was obvious that:

a.    Mr. Cipolloni could not breathe.

b.    Mr. Cipolloni's breathing pattern changed.

c.    Mr. Cipolloni gasped for air.

d.    Mr. Cipolloni's voice became quieter.

e.    Mr. Cipolloni cried out for help.

f.    Mr. Cipolloni was on drugs and/or in a delusional state of mind.

g.    Any other ways which may become known during discovery.

43.    Each Defendant acted deliberately (not accidentally) and also recklessly in the face of an unjustifiably high risk of harm that was either known or so obvious that it should be known.

44.    Each Defendant failed:

a.    To properly monitor and evaluate Mr. Cipolloni's health throughout the interaction;

b.    To care for the basic medical health needs of Mr. Cipolloni;

c.    To timely have Mr. Cipolloni evaluated by medical staff;

d.  To timely administer Narcan;

e.  To acknowledge Mr. Cipolloni's obvious signs of deterioration, and objectively serious medical needs;

f.  To provide or obtain care or treatment that was necessary to save Mr. Cipolloni's life;

g.  To refrain from acting with gross negligence or deliberate indifference toward or willful disregard of any violation of Mr. Cipolloni's constitutional rights;

h.  Any other breaches which become known during discovery.

45.  As a direct and proximate result of Defendants' above cited violations of Mr. Cipolloni's civil rights, Mr. Cipolloni died and thus his estate, by the Personal Representative, Christina Howe, has and will continue to suffer damages in the future, which include, but are not limited to:

a.  Reasonable funeral and burial expenses;

b.  Reasonable compensation for the pain and suffering undergone by Mr. Cipolloni while he was conscious during the time between his first symptoms and his death;

c.  Loss of financial support;

d.  Loss of service;

e.  Loss of gifts or other valuable gratuities;

f. Loss of society and companionship; and

g. Any and all other damages identified through the course of discovery otherwise available under the Michigan Wrongful Death Act, MCLA § 600.2922.

46. Mr. Cipolloni is survived by one or more persons eligible to recover damages under the wrongful death act.

**COUNT III**
**FAILURE TO INTERVENE**
**(Defendants Kusnir and Wilson)**

47. Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

48. Any law-enforcement officer who, while in the performance of his or her official duties, witnesses another law-enforcement officer engaging or attempting to engage in the use of excessive force against another person must take action to protect the victim.

49. Defendant Wilson was aware that Defendant Kusnir had her knee on Mr. Cipolloni's neck.

50. Defendant Wilson knew or should have known that Defendant Kusnir was suffocating Mr. Cipolloni.

51. Defendant Wilson knew or should have known Defendant Kusnir violated or was about to violate Mr. Cipolloni's Constitutional rights.

52. Defendant Kusnir knew Defendant Wilson used excessive force against Mr. Cipolloni.

53. Defendant Kusnir knew Defendant Wilson violated or was about to violate Mr. Cipolloni's Constitutional rights.

54. Defendants failed to take action to protect Mr. Cipolloni.

55. Defendant Wilson had the opportunity and means to intervene because Defendant Kusnir left her knee on Mr. Cipolloni's neck for nearly two minutes. Given the length of time, the excessive force lasted long enough for Defendants to perceive what was going on to intercede to stop it.

56. Defendant Kusnir had the opportunity to intervene because Defendant Wilson used excessive force for the entire time she was on scene.

57. Per departmental policy, officers were required to intervene if they observe excessive force.

58. Therefore, the officers were aware of the Constitutional violation, had an opportunity to intervene, and chose not to do so.

59. As a result of Defendants' excessive force, Mr. Cipolloni died.

60. By virtue of the Defendants' actions, Plaintiff has suffered, and continues to suffer damages.

61. By virtue of the Defendants' actions, Plaintiff is entitled to recover compensatory and punitive damages.

## COUNT IV
## MONELL CLAIM
### (City of Dearborn)

62.     Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

63.     Plaintiff has been subjected to a deprivation of his constitutionally protected rights and privileges secured by the United States Constitution as set forth herein.

64.     The foregoing rights were clearly established at the time of the violations.

65.     The deprivations were caused by the series of deliberately indifferent policies, customs, and established practices, including inadequate training, by the City of Dearborn, acting under the color of its statutory and legal authority.

66.     Upon information and belief, Defendant City of Dearborn had a policy and practice of holding individuals down by placing their body weight on the back and/or near the neck.

67.     This policy led to Mr. Cipolloni's death.

68.     Upon information and belief, Defendant City of Dearborn trained, authorized, encouraged, or directed officers on proper use of force.

69.     Defendants Kusnir and Wilson followed that policy.

70.     That policy led to Mr. Cipolloni's death.

71.     Defendant City of Dearborn failed to discipline officers for violations of policy related to excessive force.

72.     These customs, policies, and practices of the City of Dearborn and the Dearborn Police Department, along with improper training, monitoring, instruction, direction, discipline, and supervision, were a moving force in the constitutional violations inflicted by the individual Defendants upon the Plaintiff.

73.     This improper training, monitoring, instruction, direction, discipline, and supervision proximately caused the deprivation of Plaintiffs' constitutional rights.

74.     Plaintiff's federal constitutional claims are cognizable under 42 U.S.C. §1983.

75.     As a direct and proximate result of the unconstitutional acts of the Defendants as alleged herein, Plaintiff has sustained a violation of his rights under the law and, as a result, is entitled to declaratory relief, compensatory damages, punitive damages, and reasonable attorneys' fees and costs.

## COUNT V
## GROSS NEGLIGENCE
### (Defendants Kusnir and Wilson)

76.     Plaintiff, by reference, incorporates the preceding paragraphs as though fully set forth herein.'

77.    At all times relevant hereto, the individually named officers were acting in the course and scope of their employment with City of Dearborn.

78.    Defendants owed Mr. Cipolloni the duty to provide medical care for his serious medical needs.

64.    Defendants breached this duty and were grossly negligent as that term is defined in MCL § 691.1407(2)(c), when they acted with willful and wanton disregard for the health and welfare and safety of the decedent by the actions described above; said acts having been committed intentionally or so recklessly as to demonstrate a substantial lack of concern as to whether injury would result and/or their acts of willful and wanton misconduct toward Mr. Cipolloni and in disregard for his health, safety and constitutional/statutory rights.

65.    At all relevant times, Defendants were grossly negligent and/or committed acts of willful and wanton misconduct in one or more of the following ways:

a.    Failure to properly train officers in evaluating whether a citizen needs medical treatment, especially with regard to acute drug intoxication and/or overdose;

b.    Failing to care for the basic needs of citizens, specifically those of Mr. Cipolloni;

c.    Disregarding Mr. Cipolloni's obvious signs of deterioration, and objectively serious medical needs;

d.    Failing to timely have Mr. Cipolloni evaluated by medical staff;

e.     Failing to timely administer Narcan;

f.     Failing to timely request medical help to transport Mr. Cipolloni to a hospital who was equipped with dealing with mental health crises;

g.     Failing to refrain from acting with gross negligence or deliberate indifference toward or willful disregard of any violation of Mr. Cipolloni's constitutional rights;

h.     Failing to refrain from intentionally denying or delaying access to appropriate medical care;

i.     Any other breaches which become known during discovery.

66.     Defendants' conduct was and remains extreme and outrageous, subjecting Defendants to punitive damages.

67.     As the direct and proximate result of the above cited violations of Mr. Cipolloni's civil rights by Defendants, Mr. Cipolloni died and thus his estate, through Christina Howe has and will continue to suffer damages in the future, including, but not limited to:

a.     Reasonable funeral and burial expenses;

b.     Reasonable compensation for the pain and suffering undergone by Mr. Cipolloni while he was conscious during the time between his first symptoms and his death;

c.     Loss of financial support;

d.     Loss of service;

e.     Loss of gifts or other valuable gratuities;

f.     Loss of society and companionship; and

g.  Any and all other damages identified through the course of discovery otherwise available under the Michigan Wrongful Death Act, MCLA § 600.2922.

Respectfully submitted,

*/s/ Michael L. Jones*
Michael L. Jones (P85223)
**MARKO LAW, PLLC**
220 W Congress, 4th Floor
Detroit, MI 48226
(313) 777-7529 / Fax: 313-470-2011
michael@markolaw.com

Dated: August 2, 2024

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

CHRISTINA HOWE, as Personal Representative
for the Estate of SALVATORE CIPOLLONI,

     Plaintiff,

v.

MATTHEW WILSON, in his individual
capacity, ASHLEY KUSNIR, in her individual
capacity, and CITY OF DEARBORN,

     Defendants.

Case No.  2:24-cv-12022
Hon.
Mag.

**COMPLAINT and
JURY DEMAND**

MICHAEL L. JONES (P85223)
JONATHAN R. MARKO (P72450)
Marko Law, PLLC
Attorney for Plaintiff
220 W. Congress, 4th Floor
Detroit, MI 48226
P: (313) 777-7529
F: (313) 771-5785
michael@markolaw.com
devynn@markolaw.com

### DEMAND FOR TRIAL BY JURY

    **NOW COMES** Plaintiff Christina Howe, as the Personal Representative for the Estate of Salvatore Cipolloni, by and through her attorney, Michael L. Jones of Marko Law, PLLC, and hereby demands a trial by jury in the above-captioned matter.

Respectfully submitted,

_/s/ Michael L. Jones_

Michael L. Jones (P85223)
**MARKO LAW, PLLC**
220 W Congress, 4th Floor
Detroit, MI 48226
(313) 777-7529 / Fax: 313-470-2011
michael@markolaw.com

Dated: August 2, 2024